ORIGINAL

FILED

2006 AUG 29  AM 10: 04

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

'06 ⬛1611⬛

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. _____ |
| Plaintiff, | |
| v. | **C O M P L A I N T** |
| JOHN JANAN (1), | Title 18, U.S.C., Sec. 371- |
| MUSTAFA JAAN-AGAHA (2), | Conspiracy to Defraud the United States |
| Defendants. | *Unsealed as of 9-18-06* |
| | ~~ORDERED SEALED BY COURT~~ |

## Count 1

From on or about July 25, 1996, to on or at least August 28, 2006, in the Southern District of California, and elsewhere, the defendants, JOHN JANAN and MUSTAFA JAAN-AGAHA did knowingly and willfully combine, conspire, confederate and agree with each other and with persons known and unknown, to defraud the United States by obstructing, interfering, impairing, impeding and defeating, through fraudulent and dishonest means, the legitimate functioning of the government, that is, the regulation and control of immigration of aliens into the United States.

### THE PURPOSE AND OBJECT OF THE CONSPIRACY

It was the purpose and object of the conspiracy that MUSTAFA JAAN-AGAHA, an otherwise inadmissible alien, with the assistance JOHN JANAN and others, fraudulently and unlawfully would enter and remain in the United States.

### THE MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants sought to accomplish the conspiracy included, among others, the following:

a.    At various time between on or about July 25, 1996, and on or about at least August 28, 2006, through fraudulent and deceptive means, including but not limited to the filing of false immigration documents, one or more of the defendants arranged for the entry of MUSTAFA JAAN-AGAHA, an illegal alien, into the United States.

b.    At various times between on or about July 25, 1996, and on or about at least August 28, 2006, one or more of the defendants concealed from and falsely represented the true status of MUSTAFA JAAN-AGAHA in the United States in order to continue his unlawful presence in the United States.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the objects thereof, the defendants committed and caused to be committed in the Southern District of California, and elsewhere, at least one of the following overt acts, among others:

1.    On July 25, 1996, in San Diego, defendant JOHN JANAN filed a Petition for Alien Relative (Form I-130), claiming that "Mustafa Janan" was his son.

2.    On or about October 12, 1996, in San Diego, California, defendant JOHN JANAN caused a copy of a marriage certificate, purporting to show his marriage to a "Mazia Farhullah" in Kabul, Afghanistan, to be translated from Farsi to English.

3.    On or about February 18, 1997, in San Diego, California, defendant JOHN JANAN wrote an "Affidavit of Support" for defendant MUSTAFA JAAN-AGAHA, wherein he falsely claimed to be the father of defendant "Mustafa Janan."

4.    On or after March 3, 1997, at the U. S. Embassy in New Delhi, India, defendant MUSTAFA JAAN-AGAHA signed and submitted an "Application for Immigrant Visa and Alien Registration," wherein he falsely claimed to be the son of defendant JOHN JANAN and that he was coming to the United States to join his "father" (JANAN) and stay with defendant JOHN JANAN "permanently."

5.    On or about March 3, 1997, at the U. S. Embassy in New Delhi, India, in support of his Application for a visa to come to, enter, and remain in the United States, defendant MUSTAFA JAAN-AGAHA submitted a copy of the marriage certificate defendant JOHN JANAN had translated in San Diego on October 12, 1996, purporting to show a marriage between defendant JANAN and "Mazia Farhullah."

6.    On or after March 3, 1997, at the U. S. Embassy in New Delhi, India, in support of his Application for a visa to come to, enter, and remain in the United States, defendant MUSTAFA JAAN-AGAHA submitted defendant JOHN JANAN's "Affidavit of Support" along with tax and financial records from defendant JOHN JANAN.

7.    On or about March 24, 1997, in Los Angeles, California, defendant MUSTAFA JAAN-AGAHA presented a IR-2 Immigrant

Visa a United States immigration inspector in order to enter and remain in the United States.

8. On or about March 24, 1997, in Los Angeles, California, defendant MUSTAFA JAAN-AGAHA was admitted to the United States as lawful permanent resident using the name "Mustafa Janan."

9. On or about February 20, 2003, in San Diego, California, defendant MUSTAFA JAAN-AGAHA submitted and signed, under penalty of perjury, an application for naturalization [Form N-400], in which he falsely claimed to be "Mustafa Janan" the son of defendant JOHN JANAN.

10. On or about February 20, 2003, in San Diego, California, defendant MUSTAFA JAAN-AGAHA, under oath, falsely told a Citizenship and Immigration Services district adjudications officer that he was "Mustafa Janan" and that defendant JOHN JANAN was his father.

11. On or about March 2004, in San Diego, California, defendant JOHN JANAN submitted and signed, under penalty of perjury, Standard Form 86 (Electronic Personnel Security Questionnaire), in which he falsely claimed that "Mustafa Janan" was his son.

12. On or about July 20, 2005 in San Diego, California, defendant MUSTAFA JAAN-AGAHA, under oath, falsely told a Citizenship and Immigration Services district adjudications officer that he was "Mustafa Janan" and that defendant JOHN JANAN was his father.

13. From on or to March 24, 1997, to on or about August 4, 2005, defendant MUSTAFA JAAN-AGAHA possessed an Alien Registration Card [Form I-551] that had been obtained by means of fraud and false statements.

14. On or about September 25, 2005, at Bagram Air Force Base, Afghanistan, defendant JOHN JANAN submitted and signed, under penalty of perjury, Standard Form 86 (Electronic Personnel Security Questionnaire), in which he falsely claimed that "Mustafa Janan" was his son.

All in violation of Title 18, United States Code, Section 371.

DANIEL C. HIEL
Senior Special Agent, ICE
Department of Homeland Security

Sworn to before me and subscribed in my presence, in San Diego, California, on August 29, 2006.

NITA L. STORMES
U.S. Magistrate Judge

## AFFIDAVIT

In Support of Complaint and Arrest Warrants For:

## JOHN JANAN and MUSTAFA JAAN-AGAHA

I, Daniel C. Hiel, being first duly sworn depose and say:

1.  I am a Senior Special Agent with the United States Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS).  I am currently assigned to the San Diego, California, District office.  I have been employed as a federal agent for ten (10) years.  My duties include conducting investigations regarding violations of the Immigration and Nationality Act (INA), and related federal criminal statutes.  In conjunction with my employment, I have received formal training in detecting various types of benefit fraud relating to immigration law and procedures.  In the course of my duties I have investigated, apprehended, and prepared for prosecution, cases against persons involved in the filing of false applications for immigration benefits using deception, deceit and fraud to enter or remain in the United States.  During my career, I have participated in numerous and varied criminal investigations, including benefit fraud cases, alien smuggling cases, and false document cases.  This affidavit is based upon my investigation, professional experience and training, as well

as the statements and observations of various officers and agents of ICE and the Federal Bureau of Investigations (FBI).

2.   The facts set forth herein are those that I consider to be relevant to the purposes of this Affidavit, namely, to establish probable arrest of JOHN JANAN and MUSTAFA JAAN-AGAHA.   This affidavit does not include each and every fact that I or other law enforcement personnel may have learned in connection with the ongoing investigation referenced herein.

3.   Unless stated otherwise, I have personal knowledge of the matters set out in this affidavit.   To the extent that any information in this affidavit is not within my personal knowledge, it was made known to me through reliable law enforcement sources, confidential informants or private individuals, and I believe it to be true.

4.   In my experience and the experience of law enforcement officers with whom I have worked, some foreign nationals, individually and in concert with others, make false statements, provide false documents, and make attestations for the purpose of fraudulently obtaining entry and status in the United States.

### STATEMENT OF PROBABLE CAUSE

5.   DHS A-file 26-735-309, in the name of JOHN JANAN, reflects that:

a. On October 30, 1985, JOHN JANAN, then a native and citizen of Afghanistan entered the United States as a refugee.

b. On June 3, 1985, JOHN JANAN filed INS Form I-590, Registration for Classification as Refugee, with the Immigration and Naturalization Service. On his I-590, JOHN JANAN listed three children, but did not list a "Mustafa Janan" as one of his then existing children.

c. On May 10, 1991, JOHN JANAN filed INS Form N-400, Application to File Petition for Naturalization, with the United States Department of Justice, Immigration and Naturalization Service. On his Form N-400, JOHN JANAN did not list a "Mustafa Janan" as one of his then existing children. On his Form N-400, JOHN JANAN claims to be married to Hamida Janan, since 1978, and that he has neither been married to anyone else, nor ever been involved in a polygamist relationship. On June 21, 1991, JANAN was naturalized.

6. DHS A-file 45-605-602, in the name of "Mustafa Janan", reflects that:

a. On July 25, 1996, in San Diego California, JOHN JANAN filed INS Form I-130, Petition for Alien Relative, with the United States Department of Justice, Immigration and Naturalization Service, to immigrate a "Mustafa Janan," to the United States as his "son." According to the application, this "Mustafa Janan" was allegedly born to JANAN and a "Marzia Farhullah," on May 2, 1983, in Afghanistan.

b. On March 3, 1997, in New Delhi, India, "Mustafa Janan" filed an Application for Immigrant Visa & Alien Registration, claiming to be the "son" of JOHN JANAN and a "Marzia Farhullah Farhatullah." Supporting the application was a photocopy of an Afghani marriage certificate purporting to document the marriage of JOHN JANAN and to a "Marzia Farhullah Farhatullah."[1]

---

[1] Photographs attached to the marriage certificate have been identified by confidential source, who had a prior familial

c. On March 24, 1997, at Los Angeles, California, "Mustafa Janan" was admitted into the United States in lawful permanent resident status as the son of a naturalized U.S. citizen, JOHN JANAN.

d. On April 4, 2002, in San Diego, California, "Mustafa Janan" filed an Application for Naturalization (N-400). Along with the application he requested that his name be changed from Mustafa Janan to "Mustafa Janagha."

e. On February 10, 2003, in San Diego, California, "Mustafa Janan" had his first naturalization interview. In his application and under oath at the interview, Mustafa claimed that JOHN JANAN was his father.

f. On July 20, 2005, in San Diego, California, "Mustafa Janan," accompanied by his attorney, was re-interviewed by a Citizenship and Immigration Service officer. The entire interview was video recorded. "Mustafa Janan" was initially advised as to his obligation to tell the truth and the penalties for perjury. He was questioned extensively on how he immigrated and who his biological parents were. "Mustafa Janan" repeatedly claimed that JOHN JANAN was his "biological father."

7. Department of Defense (DOD) records reveal that in March 2004, in San Diego, California, JOHN JANAN submitted and signed, under penalty of perjury, Standard Form 86 (Electronic Personnel Security Questionnaire), in which he claimed that "Mustafa Janan" was his son.

---

relationship in the extended Janan family, as those of JOHN JANAN and a "Marzia Khwaja," the sister of Nasrullah and Nasratullah Khwaja. MUSTAFA JAAN-AGAHA lives with Nasrullah and Nasratullah Khwaja. This source has no criminal history, has not been payed or promised any money by ICE or the FBI, and is not working off any existing criminal exposure.

**8.** On August 4, 2005, DEA agents from the Los Angeles Division executed a search warrant at the residence of "Mustafa Janan," and Nasrullah and Nasratullah Khwaja at 11352 Spruce Run, San Diego, CA 92131, as the result of heroin investigation in which Khwaja was implicated in the importation of heroin in to the United States. During that search official Afghani identity documents were seized. These documents demonstrate that Mustafa's father was not Janan, but was really a "Jon Agaha." Official translation of the first document, an "Afghan National Identity Booklet," issued in 1985, when Mustafa Jaan-Agaha was two-years-old states that Mustafa's father is identified as "Jon Agha," and his grand father is identified as "Share Ali." On the second document, dated December 28, 2002, was issued by the "Afghan Ministry of Interiors, Deputy Office of Administrative Affairs, Chairmanship of Residents, Circumstantial Registration," and also identifies Mustafa's father as "Jon Agha," and his grand father is again identified as "Share Ali." Circumstantial evidence from Nasrullah Khwaja's A-file and statements from the same confidential source mention above reveal that Mustafa and Nasrullah Khwaja travel circuitously to Afghanistan in late 2002. It is believed that this second identity document was obtained by Mustafa Jaan-Agha during this 2002 trip.

**9.**    Department of Defense records reveal that on September 25, 2005, at Bagram Air Force Base, Kabul, Afghanistan, JOHN JANAN   submitted and signed, under penalty of perjury, Standard   Form   86   (Electronic   Personnel   Security Questionnaire), in which he claimed that "Mustafa Janan" was his son.

**10.** DEA Special Agents in Los Angeles, California have informed me that in late July 2006, while preparing for a criminal case in the Central District of California, in which Nasratullah Khwaja was charged with conspiracy to import heroin into the United States, attorneys for Khwaja claimed that the voice intercepted on the undercover phone calls was not Khwaja's but was "Mustafa Janan's voice."  In support of this claim, Khwaja's attorney made Mustafa available for interview (with an independent criminal defense attorney present) by the government.  Mustafa admitted that it was his voice on the undercover recording, but that he was not negotiating a drug deal.  Mustafa further claimed he was discussing the sale of real property his deceased father had left him in Afghanistan.  To support the real estate story, Khwaja's attorney also produced several Afghani official documents, along with a certified English translation, for the government's attorney to review.  I have reviewed these

documents, and they state that Mustafa's father Jaan-Agha, the son of Share Ali (Mustafa's grand father)[2] was deceased and that another of the Khwaja brothers was appointed in a power of attorney to facilitate the real estate transaction.

11. As late as August 16, 2006, in Kabul, Afghanistan, FBI agents have reported that JOHN JANAN is in Afghanistan, and JANAN is alive and well.

//

//

//

---

[2]   This is the same biographical information as to Mustafa's father and grandfather as contain in the documents seized during the execution of the DEA search warrant on August 4, 2005.  See paragraph 8, above.

Page 7 of  8

## CONCLUSION AND REQUEST TO SEAL

12. Based upon my training and experience and investigation in this matter, I believe that there is probable cause to believe that JOHN JANAN and MUSTAFA JAAN-AGAHA have defrauded the United States, and possess immigration documents obtained by fraud in violation of Title 18 U.S.C., §§ 371 and 1546.

13. I am requesting that this complaint, affidavit, the requested arrest warrants, and the sealing order itself be sealed. Disclosure of these documents prior to their execution will significantly impede this criminal investigation and could result in the unlawful flight of the defendants and the destruction of pertinent evidence.

*Further affiant sayeth not.*

*I declare under penalty and perjury that the foregoing is true and correct to the best of my knowledge.*

DANIEL C. HIEL
Senior Special Agent, ICE
Department of Homeland Security

**Sworn to before me and subscribed in my presence, in San Diego, California, on August 29, 2006.**

NITA L. STORMES
U.S. Magistrate Judge

Page 8 of 8